IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KEVIN STEVENS,

Plaintiff,

v. CIVIL NO.: WDQ-08-2022

ANNE ARUNDEL COUNTY BOARD OF EDUCATION,

Defendant.

* * * * * * * * * * * * *

MEMORANDUM OPINION

Kevin Stevens sued the Anne Arundel County Board of Education ("the Board") for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Pending are the Board's motion for summary judgment and Stevens's motion to strike arguments from the Board's reply memorandum. For the following reasons, the motions will be granted.

I. Background

In 1980, Stevens, a Caucasian, began working for the Board in the Operations Division of the Anne Arundel County Public

[1] 42 U.S.C. § 2000e *et seq.*

Schools.[2] Kevin Stevens Dep. 7:6-8, May 12, 2009. He is currently a Complex Engineer, with maintenance duties at Meade Middle and High Schools in Fort Meade, Maryland. *Id.*, Ex. 1.

In December 2006, Stevens applied for the Night Quality Control Manager ("NQCM") position in the Operations Division.[3] *Id*. 77:5-78:7; Marc Wirig Dep., Ex. 1, May 27, 2009. Dal'Mico Boston, an African American, was selected.

The NQCM is responsible for (1) facility problems and emergencies during non-school hours; (2) working with the Energy Management Office; (3) inspecting the schools to ensure efficient custodial operations; and (4) assisting with personnel matters, including verifying time sheets and employee drug and alcohol testing. Wirig Dep, Ex. 1. Former NQCMs Norman Nicolaus and Christopher O'Hara have testified that although technical proficiency with facilities and custodial equipment is essential for the job, Norman Nicolaus Dep. 19:13-20:3, May 27, 2009, personnel management has become increasingly important, *id*. 43:7-12; Christopher O'Hara Dep. 14:17-15:2, May 27, 2009.

The NQCM applications were reviewed by Human Resources Specialist Marc Wirig. Wirig Aff. ¶ 3. He identified the

---

[2] For the purposes of the Board's motion for summary judgment, Stevens's "evidence is to be believed, and all justifiable inferences are . . . drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

[3] Stevens learned of the opening on the Anne Arundel County Public Schools website, "Brass Ring." Stevens Dep. 77:5-20.

applicants who met the minimum qualifications. *Id*. ¶ 4. Wirig forwarded seven qualified applicants, including Stevens and Boston, to the Operations Division for interviews. *Id*. ¶ 3, 5.

The interviews were conducted by a panel.[4] Stevens Dep. 78:8-12. Interviews lasted 20 to 30 minutes. *Id*. 78:15-17. The panelists asked questions from a sheet that had been given to the candidates. Lynn Smothers Dep. 16:14-21, May 27, 2009. The candidates were asked the same questions. *Id*. 18:21-19:1. Nothing improper took place during Stevens's interview. Stevens Dep. 78:18-79:7.

Each panelist ranked the candidates one through seven; one was the highest score. *Id*. 27:2-29:6. The panelists scored each candidate's overall performance; there was no scoring of individual questions. *Id*. 29:2-6; Nicolaus Dep. 37:3-38:14. Smothers ranked the candidates on their answers and considered their resumes. *Id*. 8:8-12; 31:19-32:1. Nicolaus and O'Hara did not consider resumes and assessed the candidates based on interview performance, Nicolaus Dep. 20:12-15; O'Hara Dep. 24:4-25:11, and what they knew about the candidates through working with them. Nicolaus Dep. 38:15-17; O'Hara Dep. 42:5-43:13.

[4] The panelists were O'Hara, an Area Manager in the Operations Division; Nicolaus, an Acting Area Manager; and Lynn Smothers, a Business Manager at Glen Burnie High School. Stevens Dep. 78:8-12. O'Hara and Nicolaus are Caucasian; Smothers is African American. *Id*. 79:8-16.

The panelists discussed their evaluations after the last interview. O'Hara Dep. 43:18-44:16. O'Hara and Smothers ranked Boston first. O'Hara Dep. 40:9-13; Smothers Dep. 31:10-14. Nicolaus ranked Boston and Stevens in a tie for first, but deferred to the other panelists and recommended Boston. Nicolaus Dep. 22:11-23:1.

Smothers cited Boston's answers as the reason she ranked him first. Smothers Dep. 31:19-22. O'Hara thought Boston would be "a better fit for the organization" and had "better people skills" than Stevens. O'Hara Dep. 40:15-41:5. He said that although education and experience were important qualifications, the NQCM "is a very . . . personal job and you got to have people skills to work with the custodians at night, a lot of people skills." *Id*. 67:14-68:6. Nicolaus also cited Boston's interpersonal skills as a reason for ranking him first. Nicolaus Dep. 23:12. Although Stevens was more mechanically proficient than Boston--and mechanical ability is essential to the NQCM position--Nicolaus had reservations about Stevens's "interpersonal skills with other employees." Nicolaus Dep. 38:11-17.

O'Hara informed Walter George, the Supervisor of Operations, that the panel had recommended Boston. O'Hara Dep. 45:8-46:1. George had decided to follow the panel's

recommendation and did not assess the candidates. George Dep. 8:9-15; 19:15-18.

On January 11, 2007, Stevens was notified that he had not been selected. Stevens Dep. 86:16-20. He was surprised because he thought he was the most qualified candidate.[5] Stevens met with Florence Bozzella, Director of Human Resources, to find out why he had not been selected. Stevens Dep. 113:7-12. Bozzella could not explain the decision because she had not been part of the interview process; she suggested that Stevens contact Gregory Nourse, the Assistant Superintendent for Business and Management Services. Stevens Dep. 134:2-6. Although Nourse was not involved in the hiring process[6], Gregory Nourse Dep. 11:1-15, June 11, 2009, he was George’s immediate supervisor, and could reverse his decision if he determined it was unfair, *id*. 25:20-27:20.[7]

In a meeting with Nourse, Stevens explained that George was “discriminat[ing]” against him because George disliked him. *Id*.

---

[5] Stevens was not aware of the other candidates’ qualifications when he learned he had not been selected; he assumed, based on his own “dedication, loyalty, longevity, education, knowledge and experience,” that he was the most qualified. Stevens Dep. 99:19-100:15.

[6] Nourse was not aware that the Board had hired a new NQCM until Stevens told him. Nourse Dep. 10:17-11:15.

[7] Although Nourse had the authority to reverse George’s hiring decisions, he had never used it. Nourse Dep. 27:11-16.

146:7-10. Nourse asked if Stevens "realize[d] Mr. Boston is African American." *Id*. 146:5-10. Based on this statement and his opinion that he was more qualified than Boston, Stevens concluded that he had not been promoted because of his race. *Id*. 214:10-15.

On January 29, 2008, Stevens filed discrimination charges with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC").[8] Def.'s Reply, Ex. 3. On July 7, 2008, the EEOC issued a Right to Sue Letter. Paper No. 1, Ex. A. On August 5, 2008, Stevens filed this action. Paper No. 1. On July 13, 2009, the Board moved for summary judgment. Paper No. 14. On September 24, 2009, Stevens moved to strike Section IV of the Board's reply memorandum in support of its motion for summary judgment. Paper No. 24.

---

[8] A charge must be filed with a state or local agency and the EEOC within 300 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1) (2006). In its Reply, the Board argued that because Stevens filed charges with the Maryland Commission and the EEOC more than 300 days after being notified that he did not get the job, his charge was untimely under 42 U.S.C. § 2000e-5(e)(1). Stevens moved to strike this argument because it was first raised in the Reply.

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys*., 451 F. Supp. 2d 731, 734 (D. Md. 2006). The Board suggests that Stevens be given an opportunity to respond in a subsequent filing. Stevens should not bear the cost of an additional filing because the Board failed timely to raise this argument. Stevens's motion to strike will be granted.

## II. Analysis

### A. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr*., *Inc*., 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

### B. Race Discrimination under Title VII

Stevens contends that the Board failed to promote him because of his race. Under Title VII, it is unlawful "for an employer to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

1. Stevens's *Prima Facie* Case

To prove a *prima facie* case of discriminatory failure to promote, Stevens must prove that he (1) is a member of a protected class; (2) who applied for a position; (3) he was qualified for; and (4) was rejected under circumstances giving rise to an inference of discrimination. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319 n.6 (4th Cir. 2005); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). The burden of showing a *prima facie* is "relatively easy." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

The first three elements are uncontested. The Board argues that Stevens cannot satisfy the fourth element because (1) two of the panel members (Nicolaus and O'Hara) and George were Caucasian and (2) the only evidence of discriminatory animus is the remark of Nourse, who was not involved in the hiring decision. These facts do not defeat Stevens's *prima facie* case. Stevens has shown the NQCM position was filled by someone

outside his protected class. *See Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994); *Wise v. Gallagher Basset Servs*., 228 F. Supp. 2d 671, 674-75 (D. Md. 2002). Boston is African American. Accordingly, Stevens has proved his *prima facie* case.

2. The Board's nondiscriminatory reason for its decision

The Board maintains its decision not to promote Stevens was based on the unbiased recommendation of the interview panel. Stevens argues that the decision not to promote him was based on subjective factors. "[T]hat subjective criteria are involved in the reason articulated by the employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination raised by the *prima facie* case." *Love v. Alamance County Bd. of Ed.*, 757 F.2d 1504, 1507 (4th Cir. 1985). The Board has met its burden of presenting a nondiscriminatory reason for its decision.

3. Pretext

Stevens argues that the Board's reason is pretextual because: (1) he was substantially more qualified than Boston; (2) the interview panel did not use an objective scoring method; (3) Nourse's remark shows that race was a factor in the hiring decision; and (4) the Board's pursuit of a "representative workforce" is additional evidence that race was considered.

a. The Candidates' Qualifications

A substantial difference between the plaintiff's qualifications and those of the person promoted may be evidence of pretext, particularly when the proffered reason for not promoting the plaintiff is that the selectee was more qualified. *See, e.g., Ham v. Wash. Suburban Sanitary Comm'n*, 158 Fed. Appx. 457, 464 (4th Cir. 2005). The Board does not state that Boston was more qualified than Stevens; there is evidence that Stevens was qualified for the job. Nicolaus ranked Stevens and Boston equally.

Stevens lists his professional and educational accomplishments and identifies what he believes is Boston's lack of qualifications. He notes that Boston's resume did not include experience in handling emergencies, and the NQCM handles emergencies during non-school hours. Assuming that experience handling emergencies was a qualification for the NQCM position,[9] it is evident that Boston had this experience. Although Boston's resume did not include handling emergencies,[10] Nicolaus testified that Boston had done so while serving as Chief

[9] Although "responsibility for all facility problems or emergencies" is listed as an "essential job function" in the NQCM description, experience handling emergencies is not listed in the "qualification requirements" section. Wirig Dep., Ex. 1.

[10] Boston's resume is not part of the record.

Engineer at Severn Elementary School.[11] Nicolaus Dep. 33:7-34:12.

Stevens cites Nicolaus's testimony that Stevens had more technical knowledge than Boston and argues that this knowledge made him more qualified. Nicolaus also testified that Boston's interpersonal skills surpassed those of Stevens, which led him to rank the two candidates equally.

Stevens also argues that Nicolaus's and O'Hara's consideration of Boston's interpersonal skills is evidence of pretext because the NQCM position did not require such skills. The position description requires that the NQCM be an effective manager of his employees. Among the "essential job functions" in the description are (1) "[e]nsuring that all personnel required to handle [facilities] problems are notified, and the problem . . . is resolved in a safe and timely manner" and (2) "verifying employee time sheets, [and] assisting Operations Area Managers with personnel problems." Pl's Opp., Ex. 10. Further, O'Hara, a former NQCM, emphasized that interpersonal skills were increasingly important to the job. O'Hara Dep. 67:14-68:6.

[11] In response to a question about the responsibilities of a chief engineer, Nicolaus stated that the chief is responsible for "any emergencies that happen during the day. I mean, fire alarms going off, kids pulling fire alarms, kids knocking faucets off of sinks, classroom fires, trash can fires. Anything that can happen, she or he is responsible and she's there by herself." Nicolaus Dep. 33:21-34:12.

Stevens has not shown that differences between his and Boston's qualifications would allow a reasonable jury to infer pretext.

b. The Panel's Scoring System

Stevens also argues that the panel's subjective evaluation of the candidates is evidence of pretext. He does not allege that the panel's recommendation was motivated by discriminatory animus; he asserts that its use of subjective factors would permit a jury to infer that the decision was racially motivated.

"[T]he use of subjective criteria is neither improper in the promotion selection process nor indicative of unlawful discrimination." *Johnson v. Runyon*, 928 F. Supp. 575, 583 (D. Md. 1996). An employer may "properly take into account both objective factors," such as education and experience, "and more subjective factors like . . . good interpersonal skills." *Amirmokri v. Baltimore Gas & Elec. Co*., 60 F.3d 1126, 1030 (4th Cir. 1995). The Board used subjective and objective criteria in evaluating the NQCM candidates. As described above, all resumes were reviewed by Human Resources Specialist Marc Wirig, who identified the candidates who met the minimum experience and education qualifications. All who met these qualifications were interviewed by the panel, which considered subjective factors like interpersonal skills. Stevens testified that no improper

questions were asked during the interview, and he cites no evidence that the panel's recommendation of Boston was based on race.

c. Nourse's Remark

Stevens argues that Nourse's remark that Boston was African American indicates that Boston was promoted because of his race. Nourse's remark does not prove a Title VII violation. *Belyakov v. Leavitt*, 308 Fed. Appx. 720, 726 (4th Cir. 2009). The plaintiff must prove that discriminatory animus was held by one "principally responsible for, or the actual decisionmaker behind, the action." *See Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 288-89 (4th Cir. 2004)(*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151-52 (2000)).

It is undisputed that Nourse was not involved in the NQCM hiring decision; he was not aware of the decision--or even that a new NQCM was sought--until Stevens contacted him. Stevens argues that Nourse was connected to the decisionmaking process because he could have overturned George's selection. Stevens has produced no evidence that Nourse participated in the decision. *See Hill*, 354 F.3d at 286-89.

d. The Board's Pursuit of a "Representative Workforce"

Finally, Stevens cites Wirig's testimony that the Board has "always tried to ensure that African-Americans have an opportunity in our workforce" and makes an effort to "recruit and retain African-Americans in various positions throughout the system" as evidence that race influenced the Board's promotion decision. Wirig Dep. 64:8-19. Wirig testified that these efforts are not part of an affirmative action plan. *Id*. 45:15-47:7.

Stevens has offered no evidence that Boston's promotion was the result of the Board's efforts to recruit and retain African Americans in its workforce. *See Footland v. Daley*, No. 00-1571, 2000 U.S. App. LEXIS 26632, at *4 (4th Cir. Oct. 23, 2000) (affirming summary judgment when plaintiff alleging reverse discrimination based on diversity policy could not show that the adverse decision was based on that policy).

Stevens has not produced evidence that would allow a jury to infer that the Board's decision was racially discriminatory. Accordingly, the Board's motion for summary judgment will be granted.

## III. Conclusion

For the reasons stated above, the Board's motion for summary judgment, and Stevens's motion to strike will be granted.

November 12, 2009
Date

_________/s/_______________
William D. Quarles, Jr.
United States District Judge